UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **Jorge Juan Navarro**,<br><br>Petitioner,<br><br>v.<br><br>**Todd Lyons**, Acting Director, U.S. Immigrations and Customs Enforcement; **David Wesling**, Acting ICE Boston Field Office Director, U.S. Immigration and Customs Enforcement; and **Antone Moniz**, Superintendent, Plymouth County Correctional Facility,<br><br>Respondents. | Case No. 1:26-cv-10876 |

**EMERGENCY MOTION FOR BAIL HEARING AND MEMORANDUM OF LAW IN SUPPORT THEREOF**
**(Expedited Consideration Requested)**

Petitioner Jorge Juan Navarro hereby moves this Court for a bail hearing pending the Court's adjudication of his Petition for a Writ of Habeas Corpus. This motion is supported by the following Memorandum of Points and Authorities, by the Petition for Writ of Habeas Corpus, Doc. No. 1, and the declarations and exhibits filed in support of the Habeas Petition and this Motion (Doc. No. 1-3, Doc. No. 10-1, Doc. No. 22-1).

## I. INTRODUCTION

Mr. Juan Navarro seeks emergency relief from this Court. Mr. Juan Navarro challenges the way that ICE has re-detained him and its failure to adhere to the due process rights that protect

all people living in the United States, including Mr. Juan Navarro. These violations threaten the gravest of harms. ICE has now detained Mr. Juan Navarro since February 16, 2026, without providing any actual evidence of their ability to remove him. Respondents' continued detention of Mr. Juan Navarro violates the Immigration and Nationality Act (INA), its implementing regulations, Procedural Due Process and runs afoul of the Substantive Due Process Clause's prohibition on arbitrary detention.

Mr. Juan Navarro suffers from a serious medical condition, prostate cancer, and his current detention in ICE custody is interfering with his medical treatment plan. He was diagnosed with prostate cancer last year and requires consistent and timely medical attention. He has not received any oncological care for his prostate cancer while detained in ICE custody at the Plymouth County Correctional Facility. Such lack of care is putting his life in danger. The unlawful deprivation of liberty is clear, and, as his detention lengthens, Mr. Juan Navarro faces an increasingly severe risk to his health.

## II. LEGAL STANDARD

When a habeas petitioner has a clear case on the law and the facts, the U.S. District Court has inherent power to grant bail and release the petitioner pending adjudication on the merits. *Jimenez v. FCI Berlin, Warden,* 799 F.Supp.3d 59, 62 (D.N.H. 2025) (citing *Woodcock v. Donnelly*, 470 F.2d 93, 94 (1st Cir. 1972) (per curiam); *Gomes v. U.S. Dep't of Homeland Sec.*, Acting Sec'y, 460 F. Supp. 3d 132, 144 (D.N.H. 2020)).

In the First Circuit, a court may also grant bail when "exceptional circumstances are present and the petitioner demonstrates a substantial claim of constitutional error." *Jimenez*, 799 F. Supp. 3d at 62 (citing *Gomes*, 460 F. Supp. 3d at 144). Exceptional circumstances are those "that make the grant of bail necessary to make the habeas remedy effective." *Mapp v. Reno*, 241

F.3d 221, 230 (2d Cir. 2001) (quoting *Iuteri v. Nardoza*, 662 F.2d 159, 161 (2d Cir. 1981)); *see, e.g.*, *Gomes*, 460 F. Supp. 3d at 144 (possibility of high-risk detainees contracting and dying from COVID-19 at the onset of the pandemic constituted exceptional circumstances necessitating bail hearings because petitioners could die from COVID-19 before a writ of habeas corpus could be granted). Several district courts, including the District of Massachusetts, have determined bail is necessary to make the relief requested in the habeas petition effective when there is a risk that petitioners could become seriously ill or die in custody awaiting the remedy sought in the district court. *See Savino v. Souza*, 453 F. Supp. 3d 441, 454 (D. Mass. 2020); *Avendaño Hernandez v. Decker*, 450 F. Supp. 3d 443, 449 (S.D.N.Y. 2020); *Coronel v. Decker*, 449 F. Supp. 3d 274, 288 (S.D.N.Y. 2020); *Calderon Jimenez v. Wolf*, No. 18-cv-10255 MWL, Docket No. 507-1, at *3-4 (D. Mass. Mar. 25, 2020).

## III. STATEMENT OF FACTS

Mr. Juan Navarro incorporates by reference the facts laid out in his verified petition and supporting memorandum and exhibits (Doc. No. 1, Doc. No. 1-3, Doc. No. 10, Doc. No. 10-1, Doc. No. 22, Doc. No. 22-1). Petitioner offers here the additional facts that support this motion related to his medical conditions and the harm he will suffer if he remains in detention.

Prior to his current detention, Mr. Juan Navarro received regular medical treatment from Signature Healthcare. Patient Summary, Doc. 24-1 at Sub-Exhibit A. He was seen by his medical team on at least six occasions in 2025. *Id.* Mr. Juan Navarro was diagnosed with prostate cancer last year. *Id.* Prostate cancer is a "serious and life-threatening medical condition that requires timely and consistent medical treatment." Dr. Ehsaei Letter, Doc. 24-1 at Sub-Exhibit B. Active surveillance is required because it is "an aggressive disease that often progresses rapidly without appropriate intervention." *Id.* His care plan includes regular blood

testing, physical exams, biopsies to monitor for changes, and avoiding immediate treatment side effects. *Id.* His physician notes that he has an "urgent need for continued access to appropriate oncologic care." *Id.* Without this care, Mr. Juan Navarro faces risks that include "rapid disease progression and tumor growth, severe and escalating pain, obstruction of the bile duct or gastrointestinal tract, malnutrition and significant weight loss, increased risk of infection and other complications, and markedly reduced life expectancy." *Id.*

After being re-detained in the custody of ICE at the Plymouth County Correctional Facility (PCCF), a medical intake screening was conducted in English even though Mr. Juan Navarro only speaks and understands Spanish. *See* PCCF Medical Records, Doc. No. 24-1 at Sub-Exhibit C. The facility has made no record of his prostate cancer diagnosis or its required treatment plan. *See id.* Mr. Juan Navarro has received no oncological care since he arrived at PCCF on February 16, 2026. *See id.*

## IV. ARGUMENT

Mr. Juan Navarro has raised a substantial claim that Respondents violated the Due Process Clause, 8 U.S.C. § 1231(a), and its implementing regulations when it re-detained him without notice and without changed circumstances. In so doing, Respondents have interfered with his plan of care for his serious medical condition. This Court should find that his prostate cancer is an extraordinary circumstance that makes the grant of bail necessary to make the habeas remedy effective. Mr. Juan Navarro's continued detention while he awaits the outcome of the government's appeal of the final judgment in *D.V.D. v. Dep't of Homeland Sec.,* No. CV 25-10676-BEM, 2026 WL 521557 (D. Mass. Feb. 25, 2026) (Murphy, J.), *appeal docketed*, No. 26-1212 (1st Cir. Feb. 28, 2026), severely compromises his health. Mr. Juan Navarro hereby

petitions this Court for the extraordinary remedy of a grant of bail so that his requested relief—his release from detention—is not rendered ineffective.

This Court should order Mr. Juan Navarro's immediate release to restore the status quo, return him to his prior Order of Supervision. Petitioner should be immediately released because Respondents' actions present a clear violation of the law.

### A. Mr. Juan Navarro Has a Clear Case on the Law and Facts That Warrants Release

Detention of those ordered removed is governed by 8 U.S.C. § 1231. When a person is already detained, detention is mandatory for the 90-day removal-period following the issuance of a final removal order. 8 U.S.C. § 1231(a)(1). That period has long since run for Mr. Juan Navarro, who was ordered removed on November 20, 2001. Doc. No. 17-2. Following this period, ICE may continue detention—if there is a significant likelihood of removal in the reasonably foreseeable future—or release the noncitizen subject to terms of supervision. 8 U.S.C. § 1231(a)(6); 8 C.F.R. § 241.13; *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).

A person with a final removal order cannot be held in immigration detention when there is no significant likelihood of removal in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701-02 ("if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute"); *see also Kong v. United States*, 62 F.4th 608, 620, n.12 (1st Cir. 2023) ("the connection between executing a removal order and detaining a noncitizen unravels if the noncitizen is not removed within that ninety-day window, especially when, as in this case, the noncitizen has been released with supervision.").

#### 1. Respondents Failed to Follow Its Own Procedure When It Revoked Mr. Juan Navarro's Order of Supervision Without Notice and Changed Circumstances

To revoke an order of supervision ICE *must* follow its own procedures in federal regulations at 8 C.F.R. §§ 241.4 and 241.13 and can only lawfully re-detain a person on

supervised release if proper procedures are followed—including a decision by an authorized individual, notification of the reasons for revocation, and an initial informal prompt interview to afford the non-citizen an opportunity to respond to the reasons for revocation stated in the notification—and if it can show, in an individualized determination, that changed circumstances mean that it was substantially likely that the noncitizen would be removed in the reasonably foreseeable future. *See, e.g., Kong,* 62 F.4th at 619–20; *accord Nguyen v. Hyde*, 788 F. Supp. 3d 144, 152 (D. Mass. 2025); *de Rodriquez v. Hyde*, Civil Action No.: 25-CV-13210-AK, 2026 WL 220416, at *3 (D. Mass. Jan. 28, 2026) ("because Respondents have failed to adhere to their own regulations, and in the process, violated Petitioner's procedural due process rights, the Court orders Petitioner released pursuant to the conditions in her preexisting Order of Supervision"); *Vo v. Lyons,* Case No. 1:25-cv-533, 2026 WL 323133, at *3–4 (D.N.H. Jan. 27, 2026) ("The relevant question is whether ICE complied with the applicable regulations when it revoked Vo's release and returned him to custody"); *Hall v. Nessinger*, C.A. No. 25-cv-667-JJM-PAS, 2026 WL 18583, *8–9 (D.R.I. Jan. 2, 2026) ("where an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute and [ICE] fails to adhere to it, the challenged [action] is invalid)" (citations and internal quotes omitted); *Munagi v. McDonald*, Civil Action No. 25-13175-NMG, 2025 WL 3688023 *3 (D. Mass. Dec. 19, 2025) ("Because ICE violated its own regulations, the revocation of Munagi's OSUP is invalid and his detention is unlawful"); *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) ("where an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute, like the opportunity to be heard, and [ICE] fails to adhere to it, the challenged [action] is invalid" (citations and quotation marks omitted)); *Grigorian v. Bondi*, 2025 WL 2604573 *9 (S.D. Fl. Sept. 9, 2025) ("The opportunity to contest detention through an

informal interview is not some ticky-tacky procedural requirement; it strikes at the heart of what due process demands"); *You v. Nielsen*, *supra*, 321 F. Supp. 3d at 463; *Zhu*, ––– F.Supp.3d at –––, 2025 WL 2452352, at *7–9; *M.S.L. v. Bostock*, No. 6:25-CV-01204-AA, 2025 WL 2430267, at *10–12 (D. Or. Aug. 21, 2025); *Escalante v. Noem*, No. 9:25-CV-00182-MJT, 2025 WL 2491782, at *3 (E.D. Tex. July 18, 2025); *Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025); *Wing Nuen Liu v. Carter*, Case No. 25-cv-03036-JWL, 2025 WL 1696526, at *2 (D. Kan. June 17, 2025); *M.Q. v. United States*, 776 F.Supp.3d 180, 186, 190 n.1 (S.D.N.Y. 2025); *but see, Zhang v. McDonald*, No. 1:26-cv-11434, (D. Mass. *filed* Mar. 25, 2026) (finding due process violation rather than regulatory violation because a pending travel document request failed to demonstrate a significant likelihood of removal in the reasonably foreseeable future).

Respondents at the outset alleged that the purpose of re-detaining Mr. Juan Navarro was "to enforce the removal order entered against you as ICE has the ability and means to effectuate your removal" to Cuba. *See* Notice of Revocation of Release, Doc. 10-1 at Sub-Exhibit A. As support for that conclusion, Respondents state, "ICE is seeking a travel document to effect your expeditious removal to Cuba." *See id*. As of the date of this motion, 60 days have passed since Mr. Juan Navarro was re-detained and Respondents have yet to produce a single piece of evidence to support the assertion that they had either the ability or means to effectuate his expeditious removal to Cuba. A travel document to Cuba has not been produced. A request for a travel document to Cuba has not been produced. Not a single shred of evidence exists that demonstrates that ICE ever believed Cuba would issue a travel document to Mr. Juan Navarro after over 24 years of refusing to do so. The ICE declaration submitted to the Court does not even support the conclusion stated in the notice of revocation. *See* Declaration of ICE

Enforcement and Removal Operations acting Assistant Field Office Director Brian E. Sullivan (ICE Decl.), Doc. No. 7-1. In describing ICE's rationale, ICE makes absolutely no mention of any plan to deport Mr. Juan Navarro to Cuba and certainly does not provide any reason to believe his removal to Cuba would be "expeditious" as stated in the Notice of Revocation. *See* Notice of Revocation of Release, Doc. 10-1 at Sub-Exhibit A.

The INA as codified in 8 U.S.C. § 1231(a)(6) and its implementing regulations require that ICE make this determination before arresting and re-detaining Mr. Juan Navarro. The First Circuit has set clear precedent that ICE must make an individualized determination based on changed circumstances that removal has become significantly likely in the reasonably foreseeable future. *Kong*, 62 F.4th at 619-620 (citing 8 C.F.R. § 241.13(i)(2)). ICE is obligated to "discern whether its renewed effort will result in [Petitioner's] removal in the 'reasonably foreseeable future' before arresting and detaining him a second time." *Thai v. Hyde*, 788 F. Supp. 3d 57, 60 (D. Mass. 2025). Here, they did not.

ICE, by their own admission, relied not on evidence of changed circumstances with respect to removal to Cuba, but rather allege that the changed circumstances are based on a "standing agreement" with Mexico that would allow ICE to remove him to Mexico without travel documents. *See* ICE Decl., Doc. No. 7-1 at *19. Defendants' admission facially demonstrates regulatory violations of 8 C.F.R. §241.13(i)(3) and 241.4(l)(1). Both regulations require that upon revocation, the noncitizen be notified of the reasons for revocation and afforded an initial informal interview to provide "an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. 241.13(i)(3); 8 C.F.R. 241.4(l)(1). ICE states that Mr. Juan Navarro was served with the revocation notice and was given an "opportunity to respond to the reasons for the revocation." *See* ICE Decl., Doc. No. 7-1 at *18. The notice of revocation

provided to Mr. Juan Navarro does not make any mention of Mexico or any potential of removal to Mexico without a travel document as a reason for revocation. *See* Notice of Revocation of Release, Doc. No. 10-1 at Sub-Exhibit A. It is impossible for Mr. Juan Navarro to have received the required "meaningful notice of the basis for its revocation" when the sole basis ICE alleges it had to revoke his release was, in fact, not stated in the notification. *See id.*

The notification of revocation of release makes no mention of removal to Mexico and the ICE declaration attesting to its own rationale to detain Mr. Juan Navarro makes no mention of removal to Cuba. *See* Notice of Revocation of Release, Doc. No. 10-1 at Sub-Exhibit A; ICE Decl., Doc. No. 7-1. The potential explanations drawn from these two facts are bleak and certainly not lawful. If the assertion in the notice of revocation that the sole reason was to effectuate his "expeditious" removal to Cuba is correct, then Respondents clearly violated the regulation because they failed to demonstrate a changed circumstance that would make his removal to Cuba reasonably foreseeable. *See* 8 C.F.R. § 241.13(i)(2). If, on the other hand, the assertion in the ICE declaration that Respondents had made the determination that there were changed circumstances solely based on a plan to remove Mr. Juan Navarro to Mexico is truthful, despite not being included in the notification of revocation, then Respondents clearly violated the regulatory requirement of meaningful notice. *See* 8 C.F.R. § 241.4(l)(2); 8 C.F.R. 241.13(i)(3). Furthermore, the subsequent notification of intent to remove him to Mexico was served to him more than a week after he was re-detained and is an inadequate post-hoc justification. *See* 8 C.F.R. § 241.13(i)(2); *Huynh v. Wesling*, 2026 WL 183467, at *3 (D. Mass Jan.23, 2026); *Munagi*, 2025 WL 3688023, at * 2. It is also a clear violation of the notice requirement because he was never given the opportunity to respond to it as a reason for the revocation of his release. *See* 8 C.F.R. § 241.4(l)(2); 8 C.F.R. 241.13(i)(3).

As this Court has already acknowledged, Respondents have failed to provide any actual evidence of the "unwritten agreement" that they allege allow them to remove Mr. Juan Navarro to Mexico without travel documents. Stay Order, Doc. No. 23. That remains true to date.

**2. <u>Respondents' Re-Detention of Mr. Juan Navarro Violates the Due Process Clause of the Fifth Amendment</u>**

Under every scenario, Respondents' conduct and continued detention of Mr. Juan Navarro violates his rights under the Fifth Amendment of the United States Constitution.

Noncitizens are entitled to due process of law under the Fifth Amendment. *Demore v. Kim*, 538 U.S. 510, 523 (2003). To determine whether civil detention violates a detainee's Fifth Amendment due process rights, courts apply the three-part test in *Mathews v. Eldridge*, 424 U.S. 319 (1976); *see also Doe v. Moniz*, 2025 WL 2576819, at *10 (D. Mass. Sept. 5, 2025). Under *Mathews*, courts weigh the following three factors: (1) "the privacy interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

**a. Private interest**

The "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the due process] Clause protects." *Zadvydas*, 533 U.S. at 690. The interest in being free from physical detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 531 (2004); *see also Doe,* 2025 WL 2576819, at *10. Petitioner has a significant private interest in being free from physical detention. When assessing the private interest, courts consider the detainee's conditions

of confinement, namely, whether the detainee is held in conditions indistinguishable from criminal incarceration. *Hernandez-Lara v. Lyons*, 10 F.4th 19, 27 (1st Cir. 2021) (noncitizen detainee held "alongside criminal inmates"); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (same).

Here, Mr. Juan Navarro is "experiencing all the deprivations of incarceration, including loss of contact with friends and family, loss of income earning … lack of privacy, [and] the lack of freedom of movement." *Günaydin v. Trump,* 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025). Further, Petitioner is being held in conditions that present a threat to his health and well-being and directly interfere with the care he should be receiving for his medical conditions. The first *Mathews* factor plainly supports Petitioner's claim of a Fifth Amendment violation.

**b. Risk of erroneous deprivation**

Under the second *Mathews* factor, courts must "assess whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks." *Günaydin*, 784 F. Supp. 3d at 1187. Here, Petitioner has been subject to arbitrary re-detention. Regulations provide that when DHS revokes a noncitizen's OSUP, the noncitizen "will be notified of the reasons for revocation." 8 C.F.R. § 241.4(l)(2); 8 C.F.R. 241.13(i)(3). Respondents violated those regulations here, leaving the risk of erroneous deprivation of liberty not just high, but certain. ICE did not provide Petitioner with notice of the revocation of his OSUP prior to his arrival at the facility where he was re-detained. In fact, Mr. Juan Navarro had been attending check-ins monthly, giving ICE ample opportunity to provide him with proper notice. *See* Declaration of Belkis Aquino, Doc. 1-3 at Sub-Exhibit A. Furthermore, Respondents made one conclusory statement in the notice of revocation—that ICE is seeking a travel document to Cuba. Requiring ICE to give notice and an opportunity to

respond prior to revoking an Order of Supervision is of great value because it reduces the probability of needless detention of a person like Petitioner. *See* 8 C.F.R. § 241.4.

Respondents violated the Due Process guarantee of the Fifth Amendment by re-detaining Mr. Juan Navarro with no new facts individualized to him that would disturb the same determination made in 2002, 2010, and 2014 that it could not effect Mr. Juan Navarro's removal to Cuba in the reasonably foreseeable future. Respondents cannot arbitrarily re-detain Mr. Juan Navarro and re-start the clock to give themselves another six months to attempt to remove him. *See*, *e.g.*, *Nguyen*, 788 F. Supp. 3d at 149 (finding it is not presumptively reasonable for ICE to re-detain a person for any period of time without first making the determination required by *Kong*); *Vo v. US Immigration and Customs Enforcement, Acting Director*, 1:25-cv-00533-JL-TSM, Doc. No. 20, at *5 (D.N.H. Jan. 27, 2026) (same); *Nguyen v. Lyons*, 2026 WL 125093, at *2 (same); *Escalante v. Noem*, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) (same). In *Zadvydas*, the Supreme Court read an implicit limitation into § 1231(a)(6) that any post-removal period detention may not exceed the "period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689. Here, petitioner has, cumulatively, been detained for more than 255 days--well beyond the six month presumptively reasonable period--and nothing in the record indicates he is likely to be removed any time soon.

**c. Government Interest**

Immigration authorities have no legitimate interest in detaining a person they cannot remove from the United States. ICE will not suffer an administrative burden if it releases Petitioner and allows his immigration process to continue outside of custody. ICE disrupted the status quo by placing Petitioner in detention without cause. Nothing about Petitioner's release from custody would create an additional burden to Respondents or interfere with ICE's enforcement of the

immigration laws by allowing a cancer patient to receive proper care from his own medical providers while they continue their removal efforts.

### B. Exceptional Circumstances Exist Which Make The Grant Of Bail Necessary To Make the Habeas Effective

In the absence of a grant of bail, Petitioner is at risk of remaining in ICE custody in untenable conditions. Petitioner suffers from a serious medical condition: prostate cancer. Dr. Ehsaei Letter, Doc. No. 24-1 at Sub-Exhibit B. Mr. Juan Navarro was diagnosed with prostate cancer in 2025. Patient Summary, Doc. 24-1 at Sub-Exhibit A. Petitioner's condition has been diagnosed by a physician as mandating treatment. *See* Dr. Ehsaei Letter, Doc. No. 24-1 at Sub-Exhibit B. It is an "aggressive disease that often progresses rapidly without appropriate intervention." *Id.* His physician confirmed his diagnosis and the "urgent need for continued access to appropriate oncologic care." *Id.* That care has not been provided to Mr. Juan Navarro while in ICE custody and his medical need remains unmet. *See* PCCF Medical Records, Doc. No. 24-1 at Sub-Exhibit C. PCCF failed to even provide an adequate screening with an interpreter to properly identify his medical needs.[1] *See id.*

The unmet medical needs of Mr. Juan Navarro as a prostate cancer patient presents an exceptional circumstance that makes the grant of bail necessary to make the habeas remedy effective. *See Savino*, 453 F. Supp. 3d at 454; *Avendaño Hernandez*, 450 F. Supp. 3d at 449 (S.D.N.Y. 2020); *Coronel*, 449 F. Supp. 3d at 288; *Jimenez*, No. 18-cv-10255 MWL, at *3-4 (D. Mass. Mar. 25, 2020). Mr. Juan Navarro's prostate cancer presents an imminent threat to his health. The extreme and imminent risk presents "a health emergency" that warrants immediate release. *See Woodcock*, 470 F.2d at 94 (per curiam).

[1] Even if ICE remedied this by conducting a full medical screening in Spanish, the serious nature of Mr. Juan Navarro's medical condition requires the attention of the providers who have been overseeing his care.

## V. CONCLUSION

For all the foregoing reasons, Mr. Juan Navarro respectfully requests that this Court, pursuant to its inherent power to release Petitioner pending determination of the merits of his habeas corpus decision, grant bail and order Respondents to immediately release Mr. Juan Navarro, subject to the conditions of his prior order of supervision.

Dated: April 17, 2026

Respectfully submitted,

Jorge Juan Navarro,

By his counsel,

*/s/ Heather Perez Arroyo*
Heather Perez Arroyo
BBO# 698460
Christine Rodriguez
BBO# 673651
Massachusetts Law Reform Institute
40 Court Street, Suite 700
Boston, MA 02108
harroyo@mlri.org
(201) 247-7032

**Certificate of Service**

I hereby certify that I caused the foregoing document to be served on Respondents' counsel on this 17th day of April, 2026 via the CM/ECF platform.

*/s/ Heather Perez Arroyo*
Heather Perez Arroyo

**LR 7.1 Certificate**

I hereby certify that I conferred with Respondents' counsel in an attempt to reach an agreement on the foregoing Motion, but no agreement could be reached. Respondents oppose this motion.

*/s/ Heather Perez Arroyo*
Heather Perez Arroyo

Dated: April 17, 2026