**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JORGE JUAN NAVARRO,<br><br>   Petitioner,<br><br>    v.<br><br>TODD M. LYONS, Acting Director<br>Immigration and Customs Enforcement, Boston<br>Field Office; DAVID WESLING, Field Office<br>Director, ANTONE MONIZ, Superintendent,<br>Plymouth County Correctional Facility.<br>    Respondents. | Civil Action No. 1:26-cv-10876-WGY |

## RESPONDENTS' OPPOSTION TO EMEGENCY MOTION FOR BAIL HEARING

Respondents by and through their attorney, Leah B. Foley, United States Attorney for the District of Massachusetts, respectfully submit this opposition to Petitioner's Emergency Motion for Bail Hearing. ECF No. 24. For reasons set forth throughout this memorandum, Petitioner has not "demonstrated a likelihood of success on the merits" of his habeas petition—or even "substantial claims" on the merits—for purposes of obtaining bail. *Savino v. Souza*, 453 F. Supp. 3d 441, 453, 454 n.11 (D. Mass. 2020) (citing *Woodcock v. Donnelly*, 470 F.2d 93, 94 (1st Cir. 1972)). As an initial matter, Respondents incorporate by reference their prior arguments contained at ECF No. 7 and 17 and maintain that Petitioner has not demonstrated "a likelihood of success" or "substantial claims" on the merits. *See id*. Nor does Petitioner's citation to his cancer diagnosis present the "extraordinary circumstances . . . that make the grant of bail necessary to make the habeas remedy effective." *Id*. (quoting *Mapp v. Reno*, 241 F.3d 221, 230 (2d Cir. 2001)).

**A.  Petitioner has not Shown a Likelihood of Success or Substantial Claims on the Merits.**

Respondents acknowledge, but respectfully disagree with, this Court's March 25, 2025, Order staying Petitioner's removal. ECF No. 23. First, the jurisdiction stripping provisions of 8 U.S.C. § 1252 make clear that this Court does not have jurisdiction to stay removal until the First Circuit issues mandate in *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. 26-1212 (1st Cir. 2026).  The current judicial review scheme, set out at 8 U.S.C. § 1252, permits an alien to initiate judicial review of his final order of removal by filing a Petition for Review ("PFR") in the judicial circuit in which his removal proceedings concluded.  *See* 8 U.S.C. § 1252(a)(1) (courts of appeals have jurisdiction to review "final order[s] of removal").  Under 8 U.S.C. § 1252(b)(9), "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order" of removal in a PFR.  On a PFR, the courts of appeals may consider both the finding of removability and the denial of any motion. *See Reyes v. Garland*, 37 F.4th 1, 3 (1st Cir. 2022).

The statutory scheme restricts the availability and scope of judicial review of removal orders by expressly precluding habeas corpus jurisdiction and channeling review of such orders to the courts of appeals as "the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5).  The statute provides that review of all questions "of law and fact … arising from any action taken or proceeding brought to remove an alien" shall be available only through a PFR in the appropriate court of appeals.  *Id.* § 1252(b)(9).

8 U.S.C. § 1252(g) states that except as provided and notwithstanding any other provision of law, including 8 U.S.C. § 2241 or any other habeas corpus provision, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien  arising from the decision or

action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien.

Petitioner has not advanced any argument which overcomes the jurisdictional hurdles set in Section 1252. *See* ECF No. 1, 10, 22, 24. Nor has Petitioner presented any evidence that he filed a PFR or a motion to reopen his proceedings, now that he received notice of his removal to Mexico,[1] before the Immigration Court to challenge the negative Third Country Screening Determination he received from the United States Citizenship and Immigration Service ("USCIS"). Although this litigation began from Petitioner's revocation of his Order of Supervision and re-detention, even this Court has acknowledged that the present issue of this case is ICE's removal of Petitioner to a third country, Mexico. *See* ECF No. 23 at 3 ("The gist of this habeas petition focuses on Juan Navarro's concerns surrounding his pending deportation to Mexico, not his native land, Cuba."). Respondents aver that the plain language of the statute strips this Court of jurisdiction to impede the execution of a removal order, notwithstanding that this Court did the opposite based on its view that agreeing with Respondents' argument would "become abdication of [ ] duty" and that the "better part of valor" warrants staying removal. *See* ECF No. 23 at 5.[2] Courts within this district routinely conclude they lack jurisdiction over what amounts to a

---

[1] Judge Murphy noted that until an alien receives notice of removal to a specified country, "such claims are purely hypothetical and cannot be raised either in the original immigration proceedings or on a motion to reopen." *D.V.D. v. U.S. Dep't of Homeland Sec.*, 2026 WL 521557, at *16 (D. Mass. Feb. 25, 2026). That is not the case at hand, where Petitioner received notice of removal to a third country over a month ago and the record does not suggest he filed a motion to reopen claiming fear to Mexico.

[2] Indeed, another session of this Court rejected a challenge to ICE's execution of an alien's removal order and stated, "Put simply, there is a procedure to address such claims, and that procedure does not involve this Court. The Court is unwilling to ignore or defy the law, even in highly sympathetic circumstances. To do so would be a fundamental violation of its most basic responsibilities." *Doe v. Smith,* No. CV 18-11363-FDS, 2018 WL 4696748, at *3 (D. Mass. Oct. 1, 2018).

challenge to an alien's removal brought via a habeas petition. *See e.g.*, *Vega-Del Roquel v. Barr,* 568 F. Supp. 3d 73, 76 (D. Mass. 2021) (Explaining that "[o]nly claims that are not related in any way to the removal process are beyond the scope of [Section 1252(b)(9)] and therefore within the jurisdiction of federal district courts."); *Gomes v. Smith,* 381 F. Supp. 3d 120 (D. Mass. 2019) ("petitioner's habeas claims are part and parcel to his challenge to removal. As such, this Court lacks jurisdiction to adjudicate his transmuted habeas claims."); *Rodriguez-Guardado v. Smith*, 271 F. Supp. 3d 331, 337 n. 11 (D. Mass. 2017) ("Petitioner's articulated concern that he cannot adequately pursue further appellate review, should the BIA deny his motion to reopen and he is deported, is at best speculative, and in any event, a matter for the Court of Appeals to address.").

Second, while Judge Murphy's decision concluding that ICE's Third Country Removal Policy violates due process is stayed by the First Circuit, ICE may continue to remove aliens under such policy. Ultimately, the burden is on the Petitioner to make the initial showing that there is not a significant likelihood of removal in the reasonably foreseeable future. As an initial matter, Respondents maintain that Petitioner's claim, under *Zadyvdas* is premature. 533 U.S. 678, 701 (2001). Next, the Supreme Court made clear the alien must show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Id.* at 701. If the individual does so, the burden would then shift to the government to produce "evidence sufficient to rebut that showing." *Id.* Petitioner, by his own admission at ECF No. 17-3, is in communication with other Cubans who have been removed by ICE to Mexico. Additionally, although this Court did not credit ICE's declaration, Petitioner has not provided any objective evidence that Mexico will not accept him. Nor has Petitioner, as the party with the initial burden in this type of claim, addressed the questions in this Court's March 25, 2026 Order, which Respondents aver were improperly thrust upon them.

Further supporting that Petitioner cannot establish good reason to believe that removal is not likely in the reasonably foreseeable future, he failed to distinguish his case from the facts presented in *Landin Hernandez v. Moniz*, No: 25-CV-12889-LTS, ECF No. 12 at *2 (D. Mass. Oct. 23, 2025). Like *Landin-Hernandez*, Petitioner is a native and citizen of Cuba, with a final removal order to Cuba, who received the notice of third country removal to Mexico and did not present a reasonable fear at the Third Country Screening Interview, and challenged his removal to Mexico via a habeas petition. *Id*. at *1-2. And like *Landin Hernandez*, ICE followed the exact same Third Country Removal Policy while Judge Murphy's decision in *D.V.D.* was stayed by a higher court. *See id*.; *see also*, *Dep't of Homeland Sec. v. D. V. D.*, 145 S. Ct. 2627 (2025). Should the Court find that Petitioner met this burden, only then would it befall to Respondents to rebut with evidence.

As Petitioner cannot show that he is substantially likely to succeed on the merits, the Court need not reach the *Mathews v. Eldridge* factors when considering his motion for bail. *See* 424 U.S. 319, 335 (1976). However, Respondents aver that while Petitioner has an interest in avoiding detention, that interest is undercut by the statute's basic purpose – to assure a final order alien's presence at the moment of removal. *See Zadvydas*, 533 U.S. at 699. As to the risk of erroneous deprivation, Petitioner received the Third Country Screening interview to vet his fear claim to Mexico, to which he did not establish such a claim. Also, as discussed above, he could file a motion to reopen before the Immigration Court and has yet to do so. Finally, as a general matter, the Supreme Court has historically held that when addressing the Government's interest in the immigration context, and in immigration enforcement in particular, the Government's interest is at its peak. *See Flores*, 507 U.S. at 305 ("Over no conceivable subject is the legislative power of Congress more complete."). Petitioner's continued detention preserves the Government's interest

of being able to successfully effectuate his removal. S*ee Nken v. Holder*, 556 U.S. 418, 436 (2009) ("There is always a public interest in prompt execution of removal orders: The continued presence of an alien lawfully deemed removable . . . permits and prolongs a continuing violation of United States law.") (quotations and alteration omitted); *Miranda v. Garland*, 34 F.4th 338, 364 (4th Cir. 2022) ("Congress has repeatedly shown that it considers immigration enforcement—even against otherwise non-criminal aliens—to be a vital public interest.").

As such, Respondents submit that Petitioner has not shown he is substantially likely to succeed on the merits of his constitutional claim and the motion for bail should be denied.

**B.  Petitioner has not shown Extraordinary Circumstances Warranting Release on Bail.**

Nor does Petitioner's prostate cancer diagnosis constitute extraordinary circumstances warranting his release on bail. As an initial matter, Petitioner has not presented evidence, other than the fact that he was diagnosed with cancer prior to his detention, as to the severity or his treatment plan. For example, the letter from Dr. Ehsaei does not describe what stage of cancer Petitioner has, whether before he was detained, he was receiving specific cancer-related treatment, or what treatment is currently required rather than what may be required. *See* ECF No. 24-1 at Sub Exhibit B. This is supported by the fact that his medical records state "managed with active surveillance" next to the diagnosis. *See id*. at Sub Exhibit 1 at 8.

Additionally, Health Services Administrator for Plymouth County Correctional Facility ("PCCF") Dawn Struzzieri submitted a declaration regarding Petitioner's healthcare while detained. Exhibit 1.[3] ICE detained Petitioner on February 16, 2026, and transferred him to PCCF.

---

[3] Respondents filed a motion to file the instant declaration pertaining to Petitioner's health under seal, which this Court granted on April 22, 2026. ECF No. 27, 28. Should the Court order Respondents to provide the sick call slips referenced in the declaration, Respondent Antone Moniz

*See* ECF No. 7-1, ¶¶ 5, 17. During the initial intake screening on February 16, 2026, Petitioner reported the ability to speak and understand English, did not disclose his cancer diagnosis at this time, but disclosed other conditions which PCCF staff addressed. *See* Exhibit 1, ¶ 3. PCCF medical staff utilized an interpreter in the Spanish language for his initial physical health assessment on February 17, 2026, where again, Petitioner did not disclose his cancer, but PCCF addressed other medical needs. *See id.*, ¶ 5. The first, and only time that PCCF learned of Petitioner's cancer diagnosis was upon receipt of the instant motion. *See id.*, ¶ 7. Petitioner, likewise, has not asked to be seen by PCCF's medical unit for this reason to date. *See id.* At this time, Petitioner also failed to demonstrate that PCCF is not able to care for his cancer-related needs now that the facility is aware of the diagnosis. *See id.* (describing that PCCF will have Petitioner scheduled to be seen by the on-site provider to discuss next steps, such as requesting outside medical records to review and/or submit a consult for the detainee to be seen by oncology for continued care).

Additionally, this case is distinguishable from this Court's decision in *Savino* and others cited in Petitioner's motion which allowed for bail hearings during the COVID-19 pandemic. This Court followed precedent construing its authority to order bail for habeas petitioners under the reigning "exceptional circumstances of this nightmarish pandemic." *Savino v. Souza*, 453 F. Supp. 3d 441, 453 (D. Mass. 2020) (internal quotations and citation omitted). As further noted by this Court, the COVID-19 pandemic resulted in guidance from the Center for Disease Control to reduce population in facilities for detainees and staff to be better protected. *See id.* While Respondents do not wish to make light of Petitioner's cancer diagnosis, his healthcare needs are vastly different from those who had various comorbidities while detained during the COVID-19 pandemic. As

---

will provide such documents but asks that the Court in its order allow them to be filed under seal in addition to the declaration.

discussed above, Petitioner's own oncologist did not specify any further treatment other than monitoring him for progression. Additionally, now that Plymouth is aware of his diagnosis, as Petitioner did not inform the facility of this condition, the facility intends to monitor and provide appropriate care.

Based on the foregoing, Respondents request that the motion for bail be denied.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

Dated: April 23, 2026,        By:    */s/ Erica McMahon*
                      Special Assistant United States Attorney
                      United States Attorney's Office
                      1 Courthouse Way, Suite 9200
                      Boston, MA 02210
                      Tel.: 617-748-3271
                      Email: Erica.McMahon@usdoj.gov

## **CERTIFICATE OF SERVICE**

I, Erica McMahon, Special Assistant United States Attorney, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). Paper copies will be sent to those indicated as non-registered participants.

Dated: April 23, 2026                By: */s/ Erica McMahon*
                          Special Assistant United States Attorney